IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



MATTHEW BRYSON,

    Plaintiff,

vs.

GDH CONSULTING, INC.,

    Defendant

CIVIL ACTION NO. 1:22CV391

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Matthew Bryson, appearing pro se, Complains of Defendant GDH Consulting, Inc., alleging as follows:

## INTRODUCTION

1. This is an action brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* for employment discrimination, failure to accommodate, and retaliation.

## PARTIES

2. The Plaintiff is an individual who is currently, and at all relevant times herein, a resident of Durham County, North Carolina.

3. The Defendant is an Oklahoma Corporation with its principal place of business at 6100 S. Yale Ave., Suite 1000 in Tulsa, Oklahoma.

4. The Defendant is registered with the North Carolina Secretary of State to do business in North Carolina with its registered agent being CT Corporation System at 160 Mine Lake Court, Suite 200 in Raleigh, North Carolina.

5. All of the acts and/or failures to act alleged herein were duly performed by and/or are attributed to Defendant, GDH Consulting, Inc. ("GDH" or the

"Company"), individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment or were ratified by Defendant.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C §§ 1331 and 1343.

7. This Court has personal jurisdiction over the Defendant based on their systematic and continuous contacts within the Middle District of North Carolina, and pursuant to the underlying due process principles of the United States Constitution.

8. The Defendant has employed and continues to employ individuals in the Middle District of North Carolina.

9. The Defendant has caused and are causing injury within this District by discriminating against individuals within this District.

10. The venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C § 1391.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff initiated a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 4, 2022. The case number is 433-2022-01701.

12. EEOC offices are currently closed to the public. Plaintiff has called and left voicemails and continues to leave voicemails with the Raleigh EEOC office daily but has not received any return calls.

13. Plaintiff gave the Defendant fair notice of the claims alleged herein by sending a letter on May 4, 2022. A true and correct copy of this letter is attached as Exhibit 1.

## FACTUAL ALLEGATIONS

14. Plaintiff began employment with GDH beginning on January 4, 2021, as an Account Executive to sell temporary staffing services to Cisco Systems, Inc. ("Cisco").

15. Plaintiff was a member of the Cisco Team, which was comprised of five (5) Account Executives and eight (8) Recruiters, reporting to Jeremy Wilson.

16. At all times, Plaintiff was qualified for the position of Account Executive at GDH, and his work performance met the Defendant's legitimate expectations.

17. GDH recognized Plaintiff's accomplishments through company-wide announcements, quarterly and annual Highest Gross Margin awards, congratulatory letters and emails, and other recognition for individual achievements and career milestones.

18. Plaintiff suffers from major depressive disorder, an impairment that affects the proper functioning of his neurological system, and substantially limits his ability to sleep and concentrate.

19. Plaintiff is prescribed a daily medication as part of the treatment regimen for his disability.

20. On November 14, 2021, Plaintiff emailed his supervisor, Mr. Wilson, to request the reasonable accommodation of providing written daily updates

instead of verbal daily updates during the "Cisco Delivery Call." A true and correct copy of this email is attached as Exhibit 2.

21. On November 19, 2021, Plaintiff received a Microsoft Teams call from Mr. Wilson. On this call, Plaintiff was notified that his employment at GDH was terminated effective immediately.

22. Mr. Wilson alleged that Plaintiff's request for accommodation constituted insubordination.

23. Plaintiff's accounts were immediately deactivated, and he lost all access to GHD's systems.

24. Plaintiff called Melinda Kirk, GDH's Vice President of Human Resources, to complain of GDH's discriminatory and retaliatory conduct.

25. That evening, Ms. Kirk notified Plaintiff that his employment would be reinstated.

26. From November 20 to 22, 2021, Plaintiff's accounts were reactivated and his access to GDH's systems was restored.

27. Mr. Wilson continued to be Plaintiff's direct supervisor.

28. Plaintiff continued to provide verbal daily updates on the Cisco Delivery Call.

29. On January 6, 2022, Plaintiff was prescribed a second (2nd) daily medication to treat worsening mental health caused by GDH's failure to provide a reasonable accommodation and GDH's discriminatory and retaliatory conduct.

30. On March 4, 2022, Mr. Wilson required Plaintiff to confirm in writing that he would continue to provide verbal daily updates on the Cisco Delivery Call. A true and correct copy of this email is attached as Exhibit 3.

31. On May 4, 2022, Plaintiff received a Microsoft Teams call from Mr. Wilson and Heidi Haen, GDH's Director of Human Resources. On this call, Plaintiff was again notified that his employment at GDH was terminated effective immediately.

32. GDH alleged that Plaintiff had violated company policy by providing incorrect information to a Cisco employee.

33. However, GDH had previously instructed Plaintiff to provide false information to Cisco employees on multiple occasions, which Plaintiff objected to. See Exhibit 2.

34. Other similarly situated employees provided false information to Cisco employees without any investigation or punishment. For example, Hunter Heckman emailed Michelle Carter on November 8, 2021, stating that Alan Norris would leave a full-time position for a temporary contract position at Cisco. A true and correct copy of this email is attached as Exhibit 4. However, Mr. Norris had already decided that he would not leave a full-time position for a temporary contract position with any company.

35. Other similarly situated employees violated additional company policies, which jeopardized GDH's vendor status with Cisco, and their employment was not terminated. For example, Eileen Ramirez, Patrick Barthole, and Scott

Rine violated policies governing communication with Cisco employees, and all three (3) remain employees of GDH.

## COUNT I: DISCRIMINATION BASED ON DISABILITY

36. Plaintiff repeats and realleges paragraphs 1 through 35 hereof, as if fully set forth herein.

37. Plaintiff is a qualified individual with a disability.

38. Plaintiff was meeting GDH's legitimate expectations and suffered an adverse employment action when he was fired on November 19, 2021, and when he was fired again on May 4, 2022.

39. GDH first terminated Plaintiff's employment five (5) days after learning of his disability on November 14, 2021.

40. GDH terminated Plaintiff's employment again five (5) months later, alleging that he violated a company policy, without warning. However, other similarly situated employees that violated the same policy were not terminated.

41. Plaintiff suffered damages as a result of GDH's unlawful actions, including emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

42. GDH intentionally violated Plaintiff's rights under the ADA with malice and reckless indifference, and, as a result, is liable for punitive damages.

## COUNT II: FAILURE TO PROVIDE REASONABLE ACCOMMODATION

43. Plaintiff repeats and realleges paragraphs 1 through 35 hereof, as if fully set forth herein.

44. Plaintiff is a qualified individual with a disability who could perform the essential functions of his position with or without a reasonable accommodation.

45. Plaintiff notified GDH of his disability and requested a reasonable accommodation for the Cisco Delivery Call.

46. GDH would not allow Plaintiff to provide written daily updates instead of verbal updates on the Cisco Delivery Call.

47. Rather than engaging in the interactive process to address Plaintiff's request for an accommodation, GDH marginalized Plaintiff by requiring perfect attendance of him on the Cisco Delivery Call. GDH did not require perfect attendance of any other Account Executive or Recruiter on the Cisco Team.

48. Plaintiff suffered damages as a result of GDH's unlawful actions, including emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

49. GDH intentionally violated Plaintiff's rights under the ADA with malice and reckless indifference, and, as a result, is liable for punitive damages.

## COUNT III: RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

50. Plaintiff repeats and realleges paragraphs 1 through 35 hereof, as if fully set forth herein.

51. Plaintiff was qualified for his position as Account Executive at all times.

52. Plaintiff engaged in protected activity when he requested a reasonable accommodation for his disability on November 14, 2021.

53. GDH first terminated Plaintiff's employment on November 19, 2021, five (5) days after he engaged in protected activity.

54. Mr. Wilson's stated reason for terminating Plaintiff's employment on November 19 was that he considered Plaintiff's request for accommodation to be insubordination.

55. Plaintiff engaged in protected activity when he complained of discrimination and retaliation on November 19, 2021.

56. GDH terminated Plaintiff's employment again on May 4, 2022, five (5) months after he complained of discrimination and retaliation, alleging that he provided false information to a Cisco employee.

57. GDH's alleged reason for terminating Plaintiff's employment is pretextual and baseless. GDH fired Plaintiff because he sought a reasonable accommodation for his disability and because he complained of disability discrimination and retaliation.

58. Plaintiff suffered damages as a result of GDH's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

59. GDH intentionally violated Plaintiff's rights under the ADA with malice and reckless indifference, and, as a result, is liable for punitive damages.

## **PRAYER FOR RELEIF**

WHEREFORE Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff his past and future lost wages and benefits;

B. Order Defendant to reinstate Plaintiff to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

C. Award Plaintiff compensatory damages for his emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

D. Award Plaintiff punitive damages;

E. Award Plaintiff interest on lost wages, compensation, and damages, including pre- and post-judgement interest and an upward adjustment for inflation;

F. Award to Plaintiff all costs he incurred in connection with this action; and

G. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted this the 19th Day of May 2022.

_____
Matthew Bryson
1612 Waddell Ct.
Durham, NC 27703
Telephone: 919-760-5300
Email: matthewsbryson@gmail.com